KINMAN *v.* STATE.

Opinion delivered November 19, 1904.

HOMICIDE—INSTRUCTION.—Where, in a prosecution for murder, the evidence of the State tended to prove that the homicide was murder in the first degree, and the evidence of the defendant to prove that the homicide was justifiable, it was not error for the court to instruct the jury as to manslaughter also, if there was evidence upon which the jury might find defendant guilty of the latter offense.

Appeal from Crawford Circuit Court.

JEPTHA H. EVANS, Judge.

Appeal from a conviction of manslaughter. The facts are stated in the opinion. Affirmed.

The instructions mentioned in the opinion as having been given by the trial court were as follows:

"5. At common law, and under the statutes of this State, no one, in resisting an assault made upon him in the course of a sudden brawl or quarrel, or upon a sudden rencounter, or in a combat on a sudden quarrel, or from anger suddenly aroused at the time it is made, or in a mutual combat, is justified or excused in taking the life of the assailant, unless he is so endangered by such assault as to make it necessary to save his own life, or to prevent a great bodily injury, and he employed all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of killing. He cannot provoke an attack, bring on the combat, and then slay his assailant, and claim exemption from the consequences of killing his adversary on the ground of self-defense. He cannot invite or voluntarily

bring upon himself an attack with the view of resisting it. and, when he has done so, slay his assailant, and then shield himself on the assumption that he was defending himself. He cannot take advantage of a necessity produced by his own unlawful or wrongful act. After having provoked or invited the attack, or brought on the combat, he cannot be excused or justified in killing his assailant for the purpose of saving his own life, or preventing a great bodily injury, until he has in good faith withdrawn from the combat, as far as he can, and done all in his power and consistent with his safety to avoid the danger and avert the necessity of killing. If he has done so, and the other person pursues him, and the taking of life becomes necessary to save life or prevent a great bodily injury, he is excusable. But the rule is different where a man is assaulted with a murderous intent. He is then under no obligation to retreat, but may stand his ground, and, if need be, kill his adversary.

"7. If deceased and his brother were at the time of the killing then immediately about to kill defendant or do him great bodily harm, and defendant, in order to save his own life or prevent great bodily harm to himself at their hands, shot and killed deceased, then he should be entirely acquitted. But if deceased and his brother were, at the time of the killing, then immediately about to do some bodily harm to defendant, but not to take his life or do him great bodily harm, and defendant shot and killed deceased to prevent his receiving some bodily harm less than great bodily harm or death, he cannot be acquitted as having acted in self-defense upon real danger; in such latter case, although the real danger would not justify defendant to kill deceased on the ground of real danger, yet he might be justified on the ground of apparent danger as explained in the other instructions, if the evidence, in the judgment of the jury, warranted it. But if there was no danger, real or apparent, as explained in these instructions, the defendant cannot be acquitted on the ground of self-defense.

"8. If defendant was plowing in a field, and the deceased and his brother came along and acted in such a way as to induce the reasonable belief in the mind of the defendant, without fault or carelessness on his part in coming to such belief, that the deceased and his brother were then immediately about to do him great bodily harm, or take his life, and he acted on such belief,

and not out of a sudden heat of passion, or out of malice or revenge, and shot and killed deceased in order to save his own life or prevent his receiving great bodily harm at their hands, then defendant should be acquitted. But if defendant was plowing in the field, and deceased and his brother came along, and acted in such a manner as to induce the reasonable belief in the mind of defendant, without fault or carelessness on his part, that deceased and his brother were then immediately about to do him some bodily harm, but not great bodily harm, or visit death upon him, and acting on such belief, defendant shot and killed deceased, such belief of impending bodily harm less than death or great bodily harm, if such belief existed, will not justify or excuse the killing."

*Sam R. Chew,* for appellant.

The fifth instruction was abstract, and not based upon any evidence, and the giving thereof was error. 8 Ark. 183; 15 Ark. 491; 13 Ark. 317; 16 Ark. 628. Instructions No. 7 and 8 stated the law of self-defense incorrectly. Sand. & H. Dig. § 1678.

*George W. Murphy, Attorney General,* for appellee.

HILL, C. J. In April, this year, in Crawford County, Kinman shot and killed Maurice Combs. The grand jury indicted him for murder in the first degree. He was tried upon that indictment, convicted of manslaughter, sentenced to two years in the penitentiary, and obtained appeal to this court. The only questions raised are as to the giving of instructions numbered 5, 7 and 8, which will be set out by the Reporter.

It is claimed that instruction 5, as to resisting an assault made in the course of a brawl or quarrel, etc., is without evidence justifying it being given. On the day prior to the homicide Kinman had a difficulty with Maurice and E. L. Combs, brothers, aged, respectively, 15 and 19 years. This quarrel resulted only in a war of words, a warm invitation to Kinman to fight, and long range rock throwing on both sides. That night Kinman armed himself, and resumed plowing the next day in a field near where the Combs brothers were living. Returning from fishing

on this afternoon, the boys came into this field; and, on the one hand, it was testified by the survivor of them that when passing near Kinman he said he would put a stop to their walking over this plowed ground, and Maurice said, "Don't shoot," and Kinman immediately fired, killing him instantly. On the other hand, Kinman testified that they approached him as if to surround him, used menacing language and opprobrious epithets, and Maurice had his hands in his pockets. No attempt was made to show that Maurice was apparently about to use a weapon, other than the language employed. This evidence was sufficient to present the phase of the case that the assault was made in the course of a sudden brawl or quarrel, or upon a sudden rencounter, or in a combat on a sudden quarrel, or from anger suddenly aroused. While the instruction covers a wider range of the law than the facts present, yet it does so correctly, and upon some facts fairly calling for an instruction on this subject.

The objections urged to instructions 7 and 8 are not that they state the law incorrectly, but that the evidence of the State shows murder in the first degree, and the evidence of the defendant shows justifiable homicide, and that there is no evidence which could create the impression on the mind of Kinman that these boys intended bodily harm, but not great bodily harm or taking life. The jury was not bound to accept either version of the affair, and, in fact, did not; evidently regarding each as over-drawing his side of it, and finding the truth in the "golden mean." Considering the previous threats to fight him, the appellant's narrative of the manner of their approach, and the circumstances of the parties, it was fairly deducible therefrom that the approach was for the purpose of a fight, not a deadly combat, and this view made it proper and right for the circuit judge to instruct on the law governing such a situation.

Affirmed.